

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JB:EMN                                    *271 Cadman Plaza East*
F.#2009R01060                             *Brooklyn, New York  11201*

February 23, 2010

By Hand and Electronic Mail

Holly Kaplan
United States Probation Officer
United States Department of Probation
147 Pierrepont Street
Brooklyn, New York 11201

            Re:  United States v. Joseph Orlando
                 Criminal Docket No. 09-357 (ENV)

Dear Officer Kaplan:

            The government respectfully writes to set forth certain
objections to the United States Sentencing Guidelines
("Guidelines") calculation set forth in the Presentence
Investigation Report ("PSR") disclosed on February 16, 2010 for
the defendant Joseph Orlando, who is scheduled to be sentenced on
February 26, 2010 at 11:00 a.m.

            Paragraphs 1 and 21: The PSR concludes that the
enhancement based on bodily injury should be two points, rather
than the three points set forth in the plea agreement, "as the
exact extent of the victim's injuries remain unknown."  (PSR ¶
1).  In paragraph two of the plea agreement, the defendant
stipulated that the extent of the bodily injury suffered by the
debtor falls between "bodily injury" and "serious bodily injury."
See USSG §2E2.1(b)(2)(D).  The defendant's decision to stipulate
to the three-level increase, undoubtedly informed by how his
associates described to him the violent assault they committed
and the fact that the victim was hospitalized, is supported by
the facts.

            In a consensual recording made on September 27, 2006,
the defendant explains to a cooperating witness how "Tony" --
defendant Anthony Borgese -- asked him for help in collecting a
debt from someone in "upstate New York."  The defendant then
explains how he instructed "John" -- defendant Giovanni
Monteleone -- and another individual to go collect the debt.  The
defendant explains graphically how he instructed John and the

other individual to assault the debtor, and then, gleefully, describes how they took things even further:

> Tony [Borgese] says he's got this -- this Jew -- this guy up in New York State that owes him a few dollars. He says, "Joe, can you send some body?" I said, "Yeah, I'll send the two kids." I'll send John [Monteleone] and, and the kid Joey up there. This kid John -- I'll make you meet him. He's a fucking guerilla. He's so fucking strong. I says to him, "Listen to me. All I want you to do is go up there, give the guy a little crack -- not hard -- in the face, and tell him, 'Have the money.' That's all I want you to do." "All right?" I call Tony. I says, "Tony, listen to me, these kids lie like a bastard to me. They go, 'Yeah, yeah, yeah,' and they do what they want to do. [Speaking over each other]. So Tony said, "All right."
>
> So Tony meets them. Takes them -- shows them where the house is. They go back. They drop Tony off. [Laughing]. They go to the house. They ring the doorbell. The guy answers the door. He didn't even have the door open -- punches are going through the door. They beat the living shit out of him. The wife comes out. They gave her a beating. [Laughter]. They busted the house up. Tony gets a call the next morning. He don't know. The guy's in the hospital. He's in bad shape. The guy from the car dealership called him. Tony calls me. He says, "Joe." "Oh, I told you Tony. They lie to me. What do you want from me?" [Laughter]. The guy sent the money that day -- from the hospital he had the money brought!

The defendant ends the story by saying admiringly of Monteleone, "This kid -- this kid is bad!"

In another consensual recording, made on November 17, 2008, Monteleone and the other associate of the defendant who committed the assault -- now a second cooperating witness ("CW") -- talk about the incident in detail. At one point, Monteleone ("GM") says, "I hurt my hand that day." When the defendant's son asks why, the CW describes how "I gave him one kick to the fuckin' balls and John's like BOOM! and just fuckin'

knocks me down like a fuckin' rag doll and makes the man cry like a bitch.  And he's screamin' -- while he's getting a beatin', he's screaming to his wife don't call the cops."  Monteleone and the CW then recount what Monteleone did to the victim as the CW tried to flee the debtor's house and get back into his car:

> GM:  You ran to the car.  I said, "Get to the fuckin' . . ."
>
> CW:  Well, you wouldn't fuckin' stop, asshole.  I'm like, "John!  Fuck!"
>
> GM:  Because I didn't want the guy to get up and get your plate number.  So I figured if I disable the fuck. . . . [Background noise].
>
> CW:  If that guy got up, Jesus picked him up! [Laughter].

Later in the recording, Monteleone says that the defendant told him "that guy is in the hospital with a broken jaw and broken ribs."

Accordingly, the government can prove by a preponderance of the evidence that the victim sustained more than simple "bodily injury," and, moreover, there is ample factual basis for the defendant's stipulation.

Paragraphs 1 and 23: The PSR concludes that the enhancement based on the defendant's supervisory role should be two points, rather than the three points set forth in the plea agreement, because "not enough is known about the role" of a fifth coconspirator.  (PSR ¶ 1).  In paragraph two of the plea agreement, the defendant stipulated that a three-point enhancement to reflect his supervisory role in the offense is appropriate.  See USSG §3B1.1(b).  Again, the defendant's decision to stipulate to the three-level increase is supported by the facts.

The three-level enhancement applies where, among other things, the defendant "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants."  As the government informed the defendant stated at the defendant's guilty plea, the evidence shows that there were five participants involved in the instant offense: (1) the defendant, (2) Monteleone, (3) the CW, (4) Borgese and (5) Borgese's associate from the car dealership.  The government can establish that the "guy from the car dealership" the defendant

refers to in the September 2006 recording is an associate of Borgese's who sought Borgese's assistance in collecting a debt from the debtor.  In the November 2008 recording, the CW, Monteleone and the defendant's son are discussing the origin of the debt, and the CW asks, "Who was this guy to Darrow [Borgese] and how, how did he owe Darrow money?"  Monteleone explains that the victim "owed a car dealership money.  A lot of money."

Accordingly, the government can prove by a preponderance of the evidence that the defendant was a supervisor of a five-member extortionate collection of credit conspiracy and, by the same token, there is ample factual basis for the defendant's stipulation.

Paragraph 26: This paragraph in the PSR notes that the government "intends to make a motion stating that it was notified in a timely manner by the defendant of his intention" to plead guilty and subtracts three levels from the defendant's offense level, pursuant to USSG §3E1.1(a) and (b), as a result.  While the defendant is entitled to two points for acceptance of responsibility pursuant to subsection (a), the government's position is in fact that he is not entitled to a third point pursuant to subsection (b) as he did not timely notify the government of his intention to plead guilty.  To the contrary, the defendant filed a motion to dismiss the indictment and, after the motion was denied, sought a trial date and waited nearly until the eve of trial to change his plea.  The government, accordingly, will not make a motion on the defendant's behalf. See USSG §3E1.1, comment. (n.6).  Paragraph two of the plea agreement reflects the government's position in this regard, and, moreover, memorializes the defendant's stipulation that the Guidelines calculation set forth therein is appropriate.

Accordingly, the government requests that paragraph 26 of the PSR be amended to reflect a two-point decrease for acceptance of responsibility.

Paragraphs 27, 83 and 90: If adopted, the changes above result in a corresponding increase in the total offense level to 24 (¶¶ 27 and 83) and an increase in the defendant's advisory Guidelines range of imprisonment from to 57 to 71 months (¶ 83). In addition, the change in total offense level would require an

increase in the fine range to $10,000 to $100,000, per USSG
§5E1.2(c)(3).

        Please let me know if you have any questions.

                Very truly yours,

                BENTON J. CAMPBELL
                United States Attorney

By:       /s/
                Evan M. Norris
                Assistant U.S. Attorney
                (718) 254-6376

cc:  Hon. Eric N. Vitaliano (by ECF)
     Curtis Farber, Esq. (by ECF)
     Clerk of Court (ENV) (by ECF)